IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

SHANTEL F.,                          §
            Plaintiff,              §
                                    §
v.                                   §        No. 3:23-CV-2385-BW
                                    §
COMMISSIONER OF THE SOCIAL           §
SECURITY ADMINISTRATION,             §
            Defendant.             §

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Shantel F. ("Plaintiff") brings this action pursuant to the Social

Security Act (the "Act"), seeking review of the final decision of the Commissioner of

Social Security (the "Commissioner"), that denied her application for Disability

Insurance Benefits ("DIB") under Title II of the Act.  (*See* Dkt. No. 1.)  The Court

has jurisdiction over this action under 42 U.S.C. §§ 405(g) and 1383(c), and the

parties consented to proceed before the undersigned in accordance with 28 U.S.C.

§ 636(b) and Special Order Nos. 3-350 and 3-354.  (*See* Dkt. No. 18.)

Plaintiff filed a brief on appeal (Dkt. No. 13) ("Pltf. Br."), to which the

Commissioner filed a brief in response (Dkt. No. 16 ("Def. Br."), and Plaintiff filed a

reply brief (Dkt. No. 17) ("Reply").  For the reasons explained below, the

Commissioner's decision is REVERSED and REMANDED for further

administrative proceedings consistent with this opinion.

# I. BACKGROUND

On January 14, 2021, Plaintiff protectively filed an application for DIB, alleging disability beginning July 7, 2019. (*See* Dkt. No. 11-1 at 18, 177-80.)[1]  In both applications, Plaintiff alleges disability primarily due to mental impairments. (*See id*. 11-1 at 196.)  The claims were denied initially on October 14, 2021 (*id*. at 100-09), and again upon reconsideration on April 4, 2022 (*id*. at 111-20), after which Plaintiff timely requested an administrative hearing (*id*. at 121-22).

On December 19, 2022, Administrative Law Judge Derek N. Phillips ("the ALJ") held a telephonic hearing,[2] at which Plaintiff appeared and testified. (Dkt. No. 11-1 at 34-76.)  Plaintiff was represented at the hearing by Paul Burkhalter, an attorney. (*Id*. at 18.)  Michelle Aliff, an impartial vocational expert, also appeared and testified at the hearing. (*Id*.)  At the hearing, Plaintiff, through her representative, amended her alleged onset date of disability to May 1, 2020. (*Id*. at 39.)  The ALJ issued an unfavorable decision on March 16, 2023, finding Plaintiff not disabled. (*Id*. at 15-33.)  On August 25, 2023, the Appeals Council denied Plaintiff's request for further review. (*Id*. at 5-10.)  The ALJ's March 16, 2023 decision thus became the "final decision" of the Commissioner subject to judicial review under 42 U.S.C. § 405(g).

---

[1] The certified administrative transcript was filed in two parts (*see* Dkt. No. 11-1 and 11-2), and the page numbers used herein refer to the appropriate page or pages in the CM/ECF header.

[2] Due to the extraordinary circumstance presented by the Coronavirus Disease 2019 ("COVID-19") Pandemic, all participants attended the hearing by telephone. (Tr. 18.)

## II.  LEGAL STANDARDS

### A.    District Court Review

Judicial review of the Commissioner's denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied the proper legal standards in evaluating the evidence.  *See* 42 U.S.C. § 405(g); *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995).  Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *accord Copeland*, 771 F.3d at 923.  To determine whether substantial evidence of disability exists, four elements of proof must be weighted: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) claimant's subjective evidence of pain and disability; and (4) claimant's age, education, and work history.  *See Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991) (citing *DePaepe v. Richardson*, 464 F.2d 92, 94 (5th Cir.1972)).

The Commissioner, rather than the courts, must resolve conflicts in the evidence, including weighing conflicting testimony and determining witnesses' credibility, and the Court does not try the issues de novo.  *See Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995); *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994). Thus, the court may not reweigh the evidence or substitute its judgment for the Commissioner's but must scrutinize the entire record to ascertain whether substantial evidence supports the hearing decision.  *See Copeland*, 771 F.3d at 923; *Hollis v.*

*Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988).  The Court "may affirm only on the grounds that the Commissioner stated for [the] decision." *Copeland*, 771 F.3d at 923.

"Absent an error that affects the substantial rights of a party, administrative proceedings do not require 'procedural perfection.'" *Wilder v. Colvin*, No. 13-CV-3014-P, 2014 WL 2931884, at *5 (N.D. Tex. June 30, 2014) (quoting *Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012)).  "The ALJ is not required to discuss every piece of evidence in the record nor must the ALJ follow formalistic rules of articulation." *Hunt v. Astrue*, No. 4:12-CV-244-Y, 2013 WL 2392880, at *7 (N.D. Tex. June 3, 2013) (citing *Castillo v. Barnhart*, 151 F. App'x 334, 335 (5th Cir. 2005)).  "Procedural errors affect the substantial rights of a claimant only when they 'cast into doubt the existence of substantial evidence to support the ALJ's decision.'" *Wilder*, 2014 WL 2931884, at *5 (quoting *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988)). "Remand is required only when there is a realistic possibility that the ALJ would have reached a different conclusion absent the procedural error." *Id.* (citing *January v. Astrue*, 400 F. App'x 929, 933 (5th Cir. 2010)).

**B.    The Sequential Evaluation Process**

"In order to qualify for disability insurance benefits or [supplemental security income], a claimant must suffer from a disability." *Copeland*. 771 F.3d at 923 (citing 42 U.S.C. § 423(d)(1)(A)).  The Act defines "disability" as the inability to engage in substantial gainful activity ("SGA") by reason of any medically determinable physical or mental impairment that can be expected to result in death or last for a

4

continued period of 12 months. *See id*. § 423(d)(1)(A); *see also Copeland*, 771 F.3d at 923; *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985).

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Wren*, 925 F.2d at 125 (summarizing 20 C.F.R. § 404.1520(b)-(f)). On the first four steps of the analysis, the claimant has the initial burden of proving that she is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987). The burden shifts to the Secretary on the fifth step to show that the claimant is capable of performing work in the national economy and is therefore not disabled. *Id*. "A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis." *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir.1987).

At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If the claimant is not engaged in substantial gainful work activity, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of

Regulation No. 4 (the "Listings").  *Id.* § 404.1520(d).  If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled.  *Id.* § 404.1509.  If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis notwithstanding limitations for the collective impairments.  *See id.* § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f).  If the claimant can perform such requirements, then he or she is not disabled.  *Id.*  If an individual's impairment precludes him or her from performing past work, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that there is other gainful employment available in the national economy that the claimant is capable of performing. *Greenspan*, 38 F.3d at 236.  This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations or by expert vocational testimony or other similar evidence.  *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

## III.  ALJ's FINDINGS

The ALJ analyzed Plaintiff's claim for benefits under the process described above and made the following findings in his March 16, 2023 decision:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2023.

2. The claimant has not engaged in SGA since May 1, 2020, the amended alleged onset date (20 CFR 404.1571 *et seq.*).

6

3.  The claimant has the following severe impairments: obesity; major depressive disorder; generalized anxiety disorder; post-traumatic stress disorder ("PTSD"); persistent complicated bereavement disorder; and adjustment disorder (20 CFR 404.1520(c)).

4.  The claimant has no impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5.  The claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b)[3] except she can lift, carry, push, and pull 20 pounds occasionally and 10 pounds frequently. In an 8-hour workday, she can sit, stand, and/or walk for 6 hours.  She can frequently reach overhead to the right.  She can frequently balance, stoop, kneel, crouch, and/or climb ramps and stairs, whereas she can occasionally crawl and/or climb ladders, ropes, or scaffolds.  She can hear and understand simple oral instructions.  She can tolerate frequent exposures to unprotected heights, moving mechanical parts, operating a motor vehicle, and/or extreme heat.  In understanding, remembering, and carrying-out instructions, she can perform simple, routine tasks.  She can frequently interact with supervisors and/or co-workers, while she can occasionally do so with the public.  In dealing with changes in work setting, she can make simple work-related decisions.  In an 8-hour workday, she would be off-task 10% of the time in an 8-hour workday, and she would be absent one day monthly.

6.  The claimant is capable of performing past relevant work as a cleaner. This work does not require the performance of work-related activities precluded by the claimant's RFC (20 CFR 404.1565).

---

[3] 20 C.F.R. § 404.1567(b):

Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities.  If someone can do light work, [the SSA] determine[s] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

7. The claimant has not been under a disability, as defined in the Social Security Act, from May 1, 2020, the amended onset date, through the date of this decision (20 CFR 404.1520(f)).

(Dkt. No. 11-1 at 18-28.)

Accordingly, the ALJ determined that, for the application for a period of disability and disability insurance benefits, protectively filed on January 14, 2021, the claimant is not disabled under sections 216(i) and 223(d) of the Act.  (Dkt. No. 11-1 at 28.)

## IV.  ANALYSIS

Plaintiff asserts a single point of error.  She argues that the ALJ erred in evaluating the persuasiveness of an opinion provided by treating psychiatrist nurse practitioner Sussan Nwogwugwu, PMHNP-BC ("Ms. Nwogwugwu").  (*See* Pltf. Br. at 4, 15-33.)  Plaintiff asserts that the ALJ did not provide an adequate discussion of his persuasiveness analysis, and his reasoning for discrediting Ms. Nwogwugwu's opinion was deficient and not supported by substantial evidence.  (*See id*.)

The Commissioner argues in response that, the ALJ properly assessed Ms. Nwogwugwu's opinion in accordance with the revised regulations for evaluating medical evidence, and substantial evidence supports the ALJ's decision that Plaintiff retained the RFC for a range of unskilled, light work with several mental restrictions. (*See* Def. Br. at 2-10.)

Upon review of the ALJ's decision, the opinion of Ms. Nwogwugwu, and the record as a whole, the Court finds that the ALJ's failure to follow the proper legal

standard for evaluating Ms. Nwogwugwu's opinion compels remand.  *See* 42 U.S.C. § 402(g).

An ALJ's RFC finding is what an individual can still do despite her limitations.  *See Social Security Ruling* ("SSR") 96-8p, 1996 WL 374184, at *2 (July 2, 1996).  It reflects an individual's maximum remaining ability to do sustained work activity in an ordinary work setting on a regular and continuing basis.  *Id.*; *see Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001).  Although the ALJ considers opinions from medical sources on issues such as RFC, the final responsibility for deciding the RFC is reserved to the ALJ—not a doctor.  *See* 20 C.F.R. § 404.1527(d)(2).  The ALJ makes an RFC assessment based on all the relevant medical and other evidence.  20 C.F.R. § 404.1545(a)(3).  The ALJ properly interprets the medical evidence to determine a plaintiff's capacity for work.  *See Taylor v. Astrue*, 706 F.3d 600, 602-03 (5th Cir. 2012).  An ALJ is not required to adopt a specific physician's assessment but is instead responsible for interpreting the medical evidence to determine a claimant's capacity for work.  *See Miller v. Kijakazi*, 2023 WL 234773 at *4 (5th Cir. Jan. 18, 2023).

Here, the ALJ determined that Plaintiff could perform some light work; she could hear and understand simple oral instructions; in understanding, remembering, and carrying out instructions, she could perform simple, routine tasks.  She could frequently interact with supervisors and coworkers, while she could occasionally do so with the public.  In dealing with changes in work setting, she could make simple work-related decision.  In an 8-hour workday, she would be off-task 10 percent of the

9

time in an 8-hour workday, and she would be absent one day monthly.  (*See* Dkt. No. 11-1 at 22-23, Finding #6.)

On December 15, 2022, Ms. Nwogwugwu, of Hawkin's Psychiatry, responded to written interrogatories (Dkt. No.  11-2 at 280- 83) and completed a Medical Source Statement.  (Dkt. No. 11-2 at 284-85.)  Ms. Nwogwugwu reported that Plaintiff had a depressed mood, diminished interest in almost all activities, sleep disturbance, decreased energy, difficulty concentrating or thinking, and feelings of guilt or worthlessness.  (*Id.* at 280.)  She also reported that Plaintiff had anxiety with restlessness, fatigue, difficulty concentrating, irritability, and sleep disturbance, as well as panic attacks.  (*Id.* at 281.)  She opined that Plaintiff had extreme loss of ability in performing simple tasks, maintaining attention and concentration for extended periods, performing activities within a regular schedule, working in coordination or in proximity to others without being distracted by them, in her ability to complete a normal workweek without interruptions from psychologically based symptoms, in her ability to interact with others on all levels and respond appropriately to work stressors and changes in a work setting.  (*See id.* at 284-85.)

The ALJ's treatment of medical opinions is governed by the revised regulations for social security benefits claims filed after March 27, 2017.  *See* 20 C.F.R. § 404.1520c(a).  Under the revised regulations, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . .  including those from your medical sources.".  *Id.*; *accord Winston v. Berryhill*, 755 F. App'x 395, 402 n.4 (5th Cir. 2018).  Instead, ALJs must "articulate

in [their] determination or decision how persuasive [they] find all of the medical opinions . . . in [a claimant's] case record." 20 C.F.R. § 404.1520c(b). This requirement is obligatory for claims filed on or after March 27, 2017. *See* 20 C.F.R. § 404.1520c(a). Because Plaintiff applied for disability insurance benefits on January 14, 2021, the revised regulations apply to her claim.

The ALJ must consider all medical opinions in the record and evaluate their persuasiveness applying five factors: (1) supportability, (2) consistency, (3) relationship with the claimant (including: (i) length of treatment relationship, (ii) frequency of examinations, (iii) purpose of the treatment relationship, (iv) extent of treatment relationship, (v) examining relationship), (4) specialization, and (5) other factors that tend to support or contradict a medical opinion or prior administrative medical finding. *See* 20 C.F.R. § 404.1520c(c). The most important of these factors are supportability and consistency. *See* 20 C.F.R. 404.1520c(a).

The ALJ is specifically required to explain how he or she considered the most important factors of supportability and consistency, but an explanation for the remaining factors is not required unless the ALJ is deciding among multiple medical opinions of equal support and consistency on the same issue that differ slightly. *See* 20 C.F.R. § 404.1520c(b)(2). "Supportability concerns the degree to which the objective medical evidence and supporting explanations of the medical source support [her] own opinions, while consistency concerns the degree to which the medical source's opinion is consistent with the evidence from other medical sources and nonmedical sources within the record." *Wallace v. Kijakazi*, No. 3:22-CV-0820-

11

X-BH, 2023 WL 2795854, at *8 (N.D. Tex. Mar. 20, 2023) (citing 20 C.F.R.

§§ 404.1520c(c)(1), (2); 416.920c(c)(1), (2)), *adopted*, 2023 WL 2801207 (N.D. Tex.

Apr. 5, 2023).

"The measuring stick for an 'adequate discussion' is whether the ALJ's

persuasiveness explanation enables the court to undertake a meaningful review of

whether his finding with regard to the particular medical opinion was supported by

substantial evidence, and does not require the Court to merely speculate about the

reasons behind the ALJ's persuasiveness finding or lack thereof."  *Wallace*, 2023 WL

2795854, at *9 (citing *Cooley v. Comm'r of Soc. Sec.*, No. 2:20-CV-46-RPM, 2021 WL

4221620, at *6 (S.D. Miss. Sept. 15, 2021) (citations omitted); *see also Wactor v.*

*Comm'r of Soc. Sec.*, No. 1:21-CV-170, 2023 WL 2484314, at *4 (E.D. Tex. Jan. 19,

2023), *adopted*, 2023 WL 2479619 (E.D. Tex. Mar. 12, 2023).

In assessing Ms. Nwogwugwu's opinion, the ALJ set forth the following

discussion:

> As for the opinion of Ms. Nwogwugwu, I find it persuasive to the
> extent it documents the claimant's presentation at the evaluation;
> however, I find it otherwise unpersuasive because it principally relied
> on the claimant's history recitation and is wholly inconsistent with the
> evidence of record (Exhibit 15F).  The claimant's mental status
> examinations from May 2022 to October 2022 were completely normal
> with her reporting stable symptoms and no medication side-effects.

(*See* Dkt. No. 11-1 at 27.)  The Court finds the ALJ's explanation insufficient in

several ways.

First, the ALJ's reference to Plaintiff's "presentation at the evaluation" is

confusing.  (*See* Dkt. No. 11-1 at 27.)  The Court is unable to determine to what

"evaluation" the ALJ is referring.  The opinion forms completed by Ms. Nwogwugwu do not appear to correspond to a particular psychiatric visit or evaluation.  (*See* Dkt. No. 11-2 at 284-85.)  And even assuming that Ms. Nwogwugwu completed the forms on the same date as a psychiatric visit, the ALJ fails to explain what portion(s) of the opinion he found supported or unsupported by the "evaluation."  (*See id.*)

Furthermore, the ALJ's reference to Plaintiff's "presentation at the evaluation" suggests that the ALJ assessed the opinion as though it was based on a one-time evaluation.  (*See* 11-1 at 27.)  The record, however, demonstrates that Plaintiff had been receiving psychiatric treatment through Hawkins Psychiatry since August 12, 2019, when she presented to Ms.  Nwogwugwu complaining of symptoms of anxiety and depression related to the murder of her 25-year-old son in October 2016.  (*See* Dkt. No. 11-2 at 15.)  The record further demonstrates that Plaintiff continued follow-up psychiatric treatment with Ms. Nwogwugwu through at least October 7, 2022.  (*See* Dkt. No. 11-1 at 291-300; Dkt. No. 11-2 at 1-20.)  Thus, in judging the supportability of Ms. Nwogwugwu's opinion the ALJ failed to properly consider the entirety of treatment her relationship with Plaintiff or the entirety of her reported medical findings.  (*See id.*)

The Commissioner asserts that the ALJ's persuasiveness explanation is supported because the ALJ "extensively cited [Ms. Nwogwugwu's] treatment records" in the evidentiary summaries contained in his RFC discussion.  (*See* Def. Br. at 9.)  While the ALJ did summarize the treatment Plaintiff received at Hawkins

Psychiatry in his RFC discussion, there is no indication that the ALJ connected Plaintiff's treatment at Hawkins Psychiatry to Ms. Nwogwugwu.  (*See* Dkt. No. 11-1 at 24-25.)  Furthermore, the ALJ's statement that his persuasiveness analysis was based on Plaintiff's "presentation at [an] evaluation" by Ms. Nwogwugwu belies such a connection having been made.

The ALJ's failure to discuss Ms. Nwogwugwu's treatment history with Plaintiff undermines the ALJ's persuasiveness finding with respect to supportability and prevents a meaningful review of whether the ALJ's finding was supported by substantial evidence.  The lack of an "adequate discussion" by the ALJ leaves "the Court to merely speculate about the reasons behind [his] persuasiveness finding or lack thereof."  *Wallace*, 2023 WL 2795854, at *9 (citing *Cooley*, 2021 WL 4221620, at *6).

Second, the ALJ's statement that Ms. Nwogwugwu's opinion was "otherwise unpersuasive because it principally relied on the claimant's history recitation" (*see* Dkt. No. 11-1 at 27) is in direct conflict with Ms. Nwogwugwu's statements.  The interrogatories completed by Ms. Nwogwugwu reflect that her conclusions were "based" upon her "examination" of Plaintiff, her "review" of Plaintiff's "treatment records," and her "knowledge" of Plaintiff's type of "psychiatric condition."  (*See* Dkt. No. 11-2 at 280-82.)  Ms. Nwogwugwu also stated that her conclusion that the severity of Plaintiff's condition had existed since May 1, 2020, was "based upon" Plaintiff's "medical history" as obtained by her and available to her from "medical records," as well as her "own examinations" of Plaintiff.  (*See* Dkt. No. 11-2 at 283.)

14

The ALJ provided no explanation for his statement that the opinion was "otherwise unpersuasive because it principally relied on the claimant's history recitation" (*see* Dkt. No. 11-1 at 27) and cited no evidence to refute the statements made by Ms. Nwogwugwu.  Therefore, the Court is again left to "merely speculate" about the reasons for the ALJ's persuasiveness finding.  *Wallace*, 2023 WL 2795854, at *9 (citing *Cooley*, 2021 WL 4221620, at *6).

Third, the only "evidence of record" the ALJ cites to discredit the consistency of Ms. Nwogwugwu's opinion is "Exhibit 15F."  (*See* Dkt. No. 11-1 at 27.)  Exhibit 15F is the September 8, 2022 psychological evaluation performed by consultative examiner Kirsi Waller, Ph.D. (*See* Dkt. No. 11-2 at 193-98.)  The ALJ, however, provided no explanation of how Dr. Waller's report was "wholly inconsistent with" Ms. Nwogwugwu's opinion and did not cite to a single statement or medical finding made by Dr. Waller that was inconsistent with Ms. Nwogwugwu's opinion.  (*See* Dkt.  No. 11-1 at 27.)  Thus, again, the Court can only speculate about the ALJ's reasoning for finding the opinion inconsistent.  *Wallace*, 2023 WL 2795854, at *9 (citing *Cooley*, 2021 WL 4221620, at *6).

Finally, in his evaluation of the consistency of Ms. Nwogwugwu's opinion, the ALJ stated that Plaintiff's "mental status examinations from May 2022 to October 2022 were completely normal with her reporting stable symptoms and no medication side-effects."  (*See* Dkt. No. 11-1 at 27.)  Again, the ALJ did not elaborate and provided no specific citations to the record.  (*See id*.)  Furthermore, the ALJ's explanation fails to take into account the ALJ's own acknowledgement that

Plaintiff experienced "waxing and waning symptoms of anxiety and depression." (*See* Dkt. No. 11-1 at 26.)  For example, in October 2020, Plaintiff was experiencing anxiety with the anniversary of her son's murder approaching (*see* Dkt. No. 11-1 at 293), but by January 2021, her condition had stabilized again (*see* Dkt. No. 11-1 at 291).  A few months later, in May 2021, Plaintiff was dealing with another death in her family and was having a hard time with resurfacing of her depression.  (*See* Dkt. No. 11-2 at 17.)  Mental status examination findings showed she had a depressed, worried, and anxious mood with a congruent affect; she was easily distractable; and she had fair insight and judgment. (*See id*.)

During a consultative examination in July 2021, Plaintiff reported ongoing depression and anxiety attacks that would sometimes require acute care.  (*See* Dkt. No. 11-2 at 21.)  Plaintiff's condition again stabilized in August 2021 (*see* Dkt. No. 11-2 at 27-32), and she remained stable until April 2022, when she reported "a significant increase in anxiety and resurfacing of depression symptoms" due to the approaching anniversary of her son's death.  (*See* Dkt. No. 11-2 at 278.)  Mental status examination findings again demonstrated a depressed, worried, and anxious mood with congruent affect, easily distractable thought process, and fair insight and judgment (*see id*.); and her medication regimen was adjusted.  (*See id*.)

Plaintiff's anxiety and depression had once more stabilized by July 2022 (*see* Dkt. No. 11-2 at 276), but by the time of Dr. Waller psychological evaluation in September 2022, Plaintiff reported "feel[ing] anxious and experience[ing] panic

attacks when around crowds of people" (*see* Dkt. No. 11-2 at 194).  On testing and mental status examination, Dr. Waller noted  broad impairment of emotional/personality functioning associated with anxiety; recurrent distress with recollections of past traumatic events; many phobias and active avoidance of feared objects or situations; a low threshold for the experience of events as dangerous or threatening; rigidity and rumination that compromised her ability to attend and make decisions; trouble concentrating, forgetfulness, and difficulty making decisions; and unhappiness and dysphoria.  (*See* Dkt. No. 11-2 at 195-97.)

Thus, the evidence from May to October 2022 does not support the ALJ's statement that Plaintiff's mental status examinations "were completely normal with her reporting stable symptoms."  (*See* Dkt. No 11-1 at 27.)  The ALJ also failed to take into account the waxing and waning nature of Plaintiff's depression and anxiety symptoms and Dr. Waller's September 2022 psychological evaluation, evidence that does not support the ALJ's conclusion that Plaintiff's mental status examination findings were normal, and her condition was stable.  (*See id*.)

The Commissioner argues that the ALJ properly found Ms. Nwogwugwu's opinion unsupported by substantial evidence because it was completed using a checklist form with no narrative discussion supporting her findings.  (*See* Def. Br. at 7.)  While this may be true, no such justification was expressed by the ALJ as a basis for finding a portion of Ms. Nwogwugwu's opinion unpersuasive.  (*See* Dkt. No. 11-1 at 27.)  The Court must review agency actions "limited to the grounds that the agency invoked when it took the action."  *Dep't of Homeland Sec. v. Regents of the Univ.*

17

*of California*, 140 S. Ct. 1891, 1907 (2020); *Guillroy v. Berryhill*, 738 F. App'x 290, 291-92 (5th Cir. 2018) (citing *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)) ("[I]t is a fundamental rule of administrative law that 'in dealing with a determination or judgment which an administrative agency alone is authorized to make, [a reviewing court] must judge the propriety of such action solely by the grounds invoked by the agency.'").  Thus, "[t]he ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision[.]"  *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000); *see also Guy v. Comm'r of Soc. Sec.*, No. 4:20-CV-01122-O-BP, 2022 WL 1008039, at *4 (N.D. Tex. Mar. 14, 2022), *adopted*, 2022 WL 1004241 (N.D. Tex. Apr. 4, 2022).

The Commissioner also argues that the ALJ's explanation for his findings regarding the persuasiveness of Ms. Nwogwugwu's opinion can be gleaned from the ALJ's summaries of Plaintiff's medical treatment provided in his RFC discussion. (*See* Def. Br. at 7-9.)  This argument fails for similar reasons.   The Commissioner's *post hoc* rationalization cannot retroactively justify the agency's decision.  *See Regents*, 140 S. Ct. at 1909.  Furthermore, "[m]ere evidentiary summaries fall short of § 404.1520c's requirements, as evidenced by the plain meaning of the regulatory text."  *Morris v. Kijakazi*, No. 4:21-cv-01243-O-BP, 2022 WL 10177703, at *4 (N.D. Tex. Sept. 29, 2022), *adopted*, 2022 WL 10198818, at *1 (N.D. Tex. Oct. 17, 2022) (quoting *Heleodoro C. v. Comm'r, Soc. Sec. Admin.*, No. 3:20-CV-3520-E-BK, 2022 WL 4259148, at *3 (N.D. Tex. July 20, 2022), *adopted*, 2022 WL 4360555, at *1 (N.D. Tex. Sept. 19, 2022)).

It is the ALJ's duty to evaluate the persuasiveness of the medical opinion evidence of record, and it is the ALJ's duty to explain his consideration of the two most important factors in evaluating persuasiveness—consistency and supportability. *See* 20 C.F.R. § 404.1520c(a), (b)(2).  Here, the ALJ's persuasiveness analysis does not comply with the articulation requirements of 20 C.F.R. § 404.1520c.  Because the ALJ failed to provide an adequate discussion of his findings regarding the persuasiveness (or lack thereof) of Ms. Nwogwugwu's opinion, the Court cannot fulfill its constitutional obligation and conduct meaningful judicial review of the Commissioner's decision.  *See Chenery Corp.*, 332 U.S. at 196.

Because "[p]rocedural perfection in administrative proceedings is not required," *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988), "a mistake in an ALJ's decision does not automatically render the entire decision unsupported by substantial evidence."  *Botsay v. Colvin*, 658 F. App'x 715, 718 (5th Cir. 2016). Instead, "the Fifth Circuit has applied the harmless error standard where the ALJ misstated the medical evidence."  *Robinson v. Colvin*, No. 14-CV-1530, 2015 WL 5725134, at *8 (E.D. La. Sept. 28, 2015) (citing *Brunson v. Astrue*, 387 F. App'x 459, 461 (5th Cir. 2010)); *see Jones v. Saul*, No. 19-CV-880, 2020 WL 5752390, at *18 (N.D. Tex. Aug. 24, 2020) (applying harmless error standard to factual errors made in the RFC analysis), *adopted*, 2020 WL 5747873, at *1 (N.D. Tex. Sept. 25, 2020). "[H]armless error exists when it is inconceivable that a different administrative conclusion would have been reached absent the error."  *Jones*, 2020 WL 5752390, at

*18; *Reese v. Saul*, No. 4:19-CV-2787, 2020 WL 6804513, at *5 (S.D. Tex. Nov. 3, 2020), *adopted*, 2020 WL 6799610 (S.D. Tex. Nov. 19, 2020).

Given the dearth of explanations in the ALJ's analysis of Ms. Nwogwugwu's opinion, it is difficult to conclude that a different outcome is "inconceivable." Rather, further consideration of Ms. Nwogwugwu's opinion alongside other evidence in the record could conceivably result in a different conclusion following remand.  Notably, the hypothetical posed to the vocational expert at the administrative hearing provides evidence that a claimant with the work-related limitations assessed by Ms. Nwogwugwu, including being off task up to 20% of the time, tolerating less than occasional contact with supervisors, engaging in behaviors that were distracting or caused other employees to have trouble concentrating on their work for more than one-third of the time, or being absent from work for two days per month, would be unable to perform Plaintiff's past work or any other work in the competitive economy.   (*See* Dkt. No. 11-1 at 71-75.)  Thus, the Court cannot say that the ALJ's failure to properly evaluate and discuss the medical opinion evidence was harmless.  *See Moore v. Sullivan*, 895 F.2d 1065, 1070 (5th Cir. 1990) ("Where the agency applies proper legal standards in denying benefits, we must uphold the decision if it is based on substantial evidence.  However, where 'the [Commissioner] has relied on erroneous legal standards in assessing the evidence, [it] must reconsider that denial.") (quoting *Leidler v. Sullivan*, 885 F.2d 291, 294 (5th Cir.1989)); *see also Guy*, 2022 WL 1008039, at *5 ("Even if the Commissioner is correct and the ALJ reaches the same conclusion on remand, the Fifth Circuit has

rejected the notion that such a circumstance warrants affirmation of an initial decision improperly reached." (citing *Moore*, 895 F.2d at 1070)).

## CONCLUSION

Because the ALJ deviated from applicable legal standards by discrediting Ms. Nwogwugwu's opinion without furnishing the persuasiveness finding required by § 404.1520c, the Court cannot determine whether substantial evidence supports the ALJ's determination that Plaintiff is not disabled. Accordingly, the Commissioner's decision is **REVERSED** and **REMANDED** for further administrative proceedings consistent with this opinion.

**SO ORDERED** on October 15, 2024.

_____
BRIAN McKAY
UNITED STATES MAGISTRATE JUDGE

21